IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Jeffrey Frazier, an individual and Sentinel Air Medical Alliance, LLC, a Wyoming limited liability company; | )<br>)<br>)<br>) **ORDER ON DEFENDANTS'**<br>) **MOTION TO DISMISS**<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 3:21-cv-136<br>) |
| Eagle Air Med Corporation, a Utah Corporation; and Valley Med Flight, Inc., a North Dakota corporation; and Does, 1-50; | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Before the Court is Defendants Eagle Air Med Corporation's ("Eagle Air") and Valley Med Flight, Inc.'s ("Valley") motion to dismiss for lack of personal jurisdiction and for improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Doc. No. 5. Alternatively, Eagle Air and Valley move to dismiss or transfer this case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1406(a) or 1404(a). Doc. No. 11. Plaintiffs Jeffrey Frazier ("Frazier") and Sentinel Air Medical Alliance, LLC ("Sentinel") responded to the motion on October 15, 2021. Doc. No. 15. Defendants filed a reply on October 29, 2021. Doc. No. 18. For the reasons below, the motion to transfer this case is granted.

I.   **BACKGROUND**

This case involves a long-standing commercial dispute between Frazier and Sentinel, on the one hand, and Eagle Air and Valley, on the other, and is the second federal district court action involving these parties. Frazier is an individual and a citizen of Nevada. Doc. No. 4 ¶ 2. He has

also been a "partner in Sentinel" since 2009.[1] Doc. No. 15-2 ¶ 2. Sentinel is a Wyoming limited liability company with its principal place of business in Missoula, Montana and is comprised of two members, Frazier and Dirk Visser ("Visser"). Doc. No. 4 at 2. Visser is an individual and a citizen of Montana.[2] Id. According to Frazier, Sentinel provides consulting services "to self-funded health benefit plans" including plans in North Dakota. Doc. Nos. 15-2 at 1; 4, ¶ 13.

Turning to the Defendants, Eagle Air is a Utah corporation, and Valley is a North Dakota corporation. Doc. No. 7, ¶ 4. Both Eagle Air and Valley provided "air medical services, specializing in the emergency care and transport of patients in medical need[.]" Doc. No. 4, ¶¶ 5, 7.

Sentinel's claims against Eagle Air and Valley in this action originate from causes of action pursued by Eagle Air and Valley against Sentinel in Eagle Air Med Corporation, et al., v. Sentinel Air Medical Alliance, LLC, et al., Case Number: 2:16-cv-00176-TC, U.S. District Court, District of Utah (the "Underlying Action"). Doc. Nos. 4 ¶ 1; 15-1. As alleged, the Underlying Action involved Sentinel's review, in its role as a consultant, "of claims for payment for Eagle Air and Valley's air ambulance transport services." Doc. No. 4, ¶ 13. The Underlying Action was ultimately resolved on summary judgment in favor of Sentinel.

Based on the damages Sentinel allegedly suffered because of the filing and prosecution of the Underlying Action, Sentinel commenced the instant action on June 22, 2021. See Doc. No. 1. It filed its amended complaint August 24, 2021. See Doc. No. 4. The amended complaint pleads four claims against both Valley and Eagle Air: (1) wrongful use of civil proceedings; (2) abuse of

---

[1] As noted in the following sentence, Sentinel is a limited liability company, which would be comprised of members, not partners. However, Frazier characterizes himself as a "partner" in his affidavit.

[2] Hereafter, the Court refers to Frazier and Sentinel together as Sentinel, unless otherwise specified.

process; (3) tortious interference; and (4) civil conspiracy. Id. On September 17, 2021, Eagle Air and Valley responded with the pending motion to dismiss. Doc. No. 5.

## II.  LEGAL DISCUSSION

The motion to dismiss raises two arguments. First, Eagle Air asserts the Court lacks personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2). Second, and relatedly, Eagle Air and Valley assert that venue is improper under Federal Rule of Civil Procedure 12(b)(3). While Eagle Air and Valley primarily request dismissal of the action against both entities, both also argue for the transfer of the case to the United States District Court for the District of Utah as an alternative to dismissal.

### A.  Personal Jurisdiction and Rule 12(b)(2)

The Court addresses Eagle Air's motion as to personal jurisdiction first. To defeat the motion to dismiss for lack of personal jurisdiction, Sentinel must establish a prima facie showing of personal jurisdiction over Eagle Air. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). That prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish that a court has in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

This Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. First, the party must be "amenable to service of process under the appropriate long-arm statute." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the party challenging personal jurisdiction must have engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause. Id. The jurisdiction of North Dakota courts is governed by

the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648. There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." Id. A state has specific personal jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956.

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction[3] over a defendant:

---

[3] The Eighth Circuit's five-factor test essentially "blends" the tests for general and specific jurisdiction. See Northrup King Co., 51 F.3d at 1388.

4

> (1) the nature and quality of [a defendant's] contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.

Dever, 380 F.3d at 1073-74 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algoddoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). However, the Eighth Circuit directs courts to give "significant weight" to the first three factors. Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).

Under the test outlined above, Sentinel has the burden of proving facts to support personal jurisdiction. Dever, 380 F.3d at 1072. Sentinel need not prove personal jurisdiction by a preponderance of the evidence until a court holds an evidentiary hearing or until trial. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Absent a hearing, the Court will consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party. Romak USA, 383 F.3d at 983-84.

Additionally, although Sentinel is correct that pleadings and affidavits must be construed in the light most favorable to the plaintiff, "'conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction.'" DeLorenzo v. Ricketts & Assocs., Ltd., No. 15-CV-2506 (VSB), 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017), aff'd sub nom. DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6 (2d Cir. 2018). "Accordingly, affidavits or declarations in support of personal jurisdiction 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" Fed.

R. Civ. P. 56(c)(4)." Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd., 477 F. Supp. 3d 241, 251 (S.D.N.Y. 2020), appeal withdrawn, No. 20-3081, 2021 WL 4190722 (2d Cir. Apr. 14, 2021) (quoting Bracken v. MH Pillars Inc., No. 15-CV-7302 (RA), 2016 WL 7496735, at *2 (S.D.N.Y. Dec. 29, 2016)).

Before moving to the Eighth Circuit's minimum contacts test, the Court notes that the parties rely on their respective declarations and affidavits. Frazier provided a declaration for Sentinel, summarizing his understanding of how Eagle Air operates its business in the state of North Dakota. Doc. No. 15-2. His understanding is based on "industry experience and the reputation of Eagle Air in the industry." Id. Mike Brown ("Brown") and Brandi Jordan ("Jordan") provided declarations and affidavits for Eagle Air and Valley. Brown is an authorized representative of Eagle Air and Valley, and his declaration is "based on [his] personal knowledge, review of corporate records, information learned through the ordinary course of business, and verification of facts by corporate personnel." Doc. No. 7. Similarly, Jordan is an authorized representative of Eagle Air and Valley, and her declaration is "based on [her] personal knowledge and/or [her] review of records maintained in the ordinary course of business, information learned through the ordinary course of business, and/or verification of facts by corporate personnel." Doc. No. 19.

       **1.**    **Nature and Quality of Contacts**

The Court begins with the first factor of the Eighth Circuit's minimum contacts test – the nature and quality of contacts between Eagle Air and North Dakota. Sentinel contends that the nature and quality of Eagle Air's involvement in North Dakota indicates an effort to avail itself of the privilege of doing business in North Dakota. To the contrary, Eagle Air claims that it ceased

6

operations in North Dakota in 2017, and even when operational, any possible contacts were too attenuated and violate due process.

To start, Sentinel looks at the complaint in the Underlying Action and points out that, in the Underlying Action, Defendants described their medical air transport services as "interstate[,]" which contradicts Eagle Air's characterization of its services in this action. The Court disagrees. Eagle Air's services, as described in the complaint in the Underlying Action, align with the explanation of its services provided at that time. Specifically, the complaint illustrates an example of Eagle Air providing services within its regional territory in Utah. Sentinel also ignores that the complaint was filed in 2016—over five years ago—and that Eagle Air has been nonoperational since 2017. And perhaps most importantly, the "interstate" characterization, even if true, does not itself provide sufficient contact with North Dakota specifically.

Second, Sentinel claims, via Frazier's affidavit testimony, that Eagle Air operates in North Dakota "through its Utah affiliate Guardian Flight, LLC"[4] and actively solicits North Dakotans for membership in its air service program via online advertising. Doc. No. 15 at 15. While it is possible to establish personal jurisdiction through an affiliate, Sentinel does not do so here.

"[T]he Supreme Court in Cannon Manufacturing. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), recognized the possibility of imputing the forum contacts of a subsidiary to a parent for personal jurisdiction purposes, but declined to do so where these affiliates maintained separate and distinct corporate entities." In re Chinese Manufactured Drywall Prod. Liab. Litig., 894 F. Supp. 2d 819, 867–68 (E.D. La. 2012), aff'd, 742 F.3d 576 (5th Cir.

---

[4] Global Medical Response, Inc., formerly known as Air Medical Group Holdings, Inc., wholly owns Guardian Flight LLC and AMGR Acquisition LLC. AMGR Acquisition wholly owns Eagle Air and Valley. See Doc. Nos. 7, 19.

2014), and aff'd, 753 F.3d 521 (5th Cir. 2014) (internal citations omitted). As the Fifth Circuit Court of Appeals explained:

> Numerous courts have since read Cannon as permitting, in certain circumstances, based on the relationship of affiliated corporations, imputation of one corporation's forum contacts to another for personal jurisdiction purposes. Generally, the jurisprudence considers a number of factors to determine if the level of 'control' or 'importance' between the corporate entities is sufficient for the imputation of forum contacts.

Id. Here, however, Sentinel offers nothing, other than Frazier's affidavit (which is not based on personal knowledge of Eagle Air's operations), to suggest that either of the two limited liability corporations, Guardian Flight, LLC or Eagle Air, who share a parent company, assert the level of "control" or "importance" over the other sufficient to impute minimum contacts.

Turning to Sentinel's online contacts argument, online activity can create sufficient minimum contacts on certain facts, but Sentinel fails to establish such facts here. In analyzing whether internet contacts are sufficient under specific jurisdiction, the Eighth Circuit has found the test prescribed in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D. Pa. 1997), to be instructive. Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010). In Zippo, "[t]he court created a 'sliding scale' to measure the likelihood of personal jurisdiction." Id. (internal citation omitted). "The scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website." Id. (internal citation omitted). The middle ground, however, "is occupied by interactive Web sites where a user can exchange information with the host computer." Schweers v. Hovaten, No. CIV 99-162 MV/DJS, 1999 WL 35808954, at *5 (D.N.M. Sept. 21, 1999). "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id.

Sentinel argues that Eagle Air's presence falls within the "interactive" middle ground under the Zippo test because it advertised and made its membership forms available online.[5] However, at least one court in the District of North Dakota has declined to make a similar finding where a website contained minimal opportunities for the consumer to interact. See Atkinson v. McLaughlin, 343 F. Supp. 2d 868 (D.N.D. 2004). In Atkinson, the court addressed whether the website at issue fell "into either the middle or the passive end of the 'sliding scale' spectrum as described in Zippo." Id. at 873. The court found that the website at issue was passive, explaining that the fact the website "contains an e-mail, hyper-link does not, in and of itself, render the Web site interactive." Atkinson, 343 F. Supp. 2d at 874.

Nevertheless, the Court need not directly decide whether Eagle Air's presence is interactive or passive because even assuming, *arguendo*, Eagle Air's presence is interactive, the contacts as alleged are insufficient to establish personal jurisdiction. For instance, "under Zippo, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant." Johnson, 614 F.3d at 797 (8th Cir. 2010) (declining to confer personal jurisdiction based on the mere possibility of forum contacts via a website). Sentinel fails to provide evidence of a single individual who engaged with Eagle Air online. And to the contrary, Eagle Air offers evidence to show that North Dakota residents seeking

---

[5] Once again, Sentinel relies primarily on Frazier's affidavit testimony. However, Frazier does not have personal knowledge about Eagle Air's alleged membership recruitment or bases of operation in North Dakota and instead bases his conclusory allegations on his "industry experience and the reputation of Eagle Air in the industry." Doc. No. 15-2 at ¶ 4. In contrast, Jordan and Brown have testified that their declarations are based on personal knowledge, review of corporate records, information learned through the ordinary course of business, and/or verification of facts by corporate personnel.

membership online are warned that their membership benefits will only apply to air ambulance transports provided outside of North Dakota.

Taken together, as to the first factor, the Court concludes that the nature and quality of Eagle Air's alleged contacts with North Dakota do not support the exercise of personal jurisdiction.

### 2. Quantity of Contacts

As to the second factor, the quantity of contacts, Sentinel states that the quantity of North Dakota memberships is unknown without discovery. Sentinel focuses its argument on Eagle Air's contacts arising from online membership. Sentinel admits that the quantity of internet contacts is unknown, but urges this Court to infer that many North Dakotans have accessed the website and brochure, citing Superguide Corp. v. Kegan, 987 F. Supp. 481, 487 (W.D.N.C. 1997), which stated:

> [A] reasonable inference which arises is that [the number of hits to the defendant's website originating from the forum state] are numerous inasmuch as [the forum state] is one of the populated states; however, should discovery reveal that the hits from [residents of the forum state] are insubstantial, the jurisdictional issue may be revisited.

Id.

The Court is not convinced by this argument. The Eighth Circuit has emphasized the importance of evidence of the quantity of contacts when analyzing internet contacts:

> Under the Zippo test, it is possible for a Web site to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not substantial. . . As a result, we will first apply the Zippo test and then also look at the quantity of those contacts with [forum] residents.

Lakin v. Prudential Sec., Inc., 348 F.3d 704, 712 (8th Cir. 2003). The Eighth Circuit refused to find personal jurisdiction where the record contained no information describing the quantity of contacts. Id. As a result, the Court finds this factor does not weigh in favor of personal jurisdiction because Sentinel has not produced evidence of any contacts between the forum state and a website

10

administered by Eagle Air, or evidence of any North Dakota residents who enjoy the membership services once provided by Eagle Air.

### 3. Relation of Contacts to Cause of Action

The next factor, the relation of contacts to the cause of action, also weighs against exercising personal jurisdiction. This case arises from the Underlying Action litigated in Utah. Sentinel alleges that Eagle Air brought the Underlying Action to intentionally damage Sentinel's reputation in any market where Eagle Air does business, including North Dakota, thus inhibiting Sentinel's ability to secure clients there. It argues that the resulting damage, including potential loss of clients in North Dakota, represents Eagle Air's contacts with North Dakota and is related directly to the Underlying Action.

Whether North Dakota residents engage in business activity with Sentinel is not the proper focus of the minimum contacts inquiry. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Additionally, the crux of this argument rests on the relationship between Sentinel and potential clients, which is also misplaced. "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 571 U.S. 277, 291, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (citing Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Accordingly, this factor also weighs against exercising personal jurisdiction on these facts.

### 4. Interest of the Forum State

It is well-established in the Eighth Circuit that the first three factors above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). The fourth factor is the interest the forum state has in adjudicating the cause of action. Sentinel calls the harm felt by North Dakota residents "indirect." It argues that the alleged reputational damage to Sentinel deprives North Dakotans of the benefit of receiving a review from Sentinel or Frazier regarding Eagle Air's invoices. The Court finds any interest North Dakota might have in "vindicating" harms befallen on its citizens too attenuated to comport with due process. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183-84, 85 L. Ed 2d 528. Based on the specific facts in this case, North Dakota's interest in adjudicating these claims appears to be minor.

### 5. Convenience of the Parties

The final factor is convenience of the parties. Sentinel contends that if it is convenient for Eagle Air to solicit North Dakota clients on the internet, then it is not inconvenient to find itself under the jurisdiction of North Dakota's courts. However, as discussed above, no contacts via the internet have been established.

Sentinel also points out that Valley would be burdened by litigation in Defendants' preferred venue, Utah, just as Sentinel would be burdened in North Dakota. Sentinel cites Zidon v. Pickrell, 344 F. Supp. 2d 624, 633 (D.N.D. 2004), to support this proposition. Zidon, however, is inapposite, in part because the court determined that the convenience of the parties factor did not favor either party. Furthermore, in Zidon, the parties wished to litigate in their home states. Here, Sentinel and Frazier do not prefer to litigate in one of their home states, either Montana or

Wyoming. Jurisdiction in North Dakota is not convenient for Sentinel, Frazier, or Eagle Air. As a result, this factor does not favor either party.

On balance, and given the supporting facts in the record, the five factors weigh against this Court exercising personal jurisdiction over Eagle Air under Federal Rule of Civil Procedure 12(b)(2).

### 6. Calder "Effects" Test

In addition to the five-factor test, the Court considers additional factors under the Calder "effects" test when an intentional tort is alleged. Dakota Indus., 946 F.2d at 1391. In Calder, an entertainer residing in California sued Florida-based National Enquirer for libel. Because the defendant knew that the "brunt of the injury" would be suffered in the state where the plaintiff lived and where the newspaper had the greatest readership, the Supreme Court concluded that "petitioners must 'reasonably anticipate being haled into court there.'" Calder, 465 U.S. 790. "The Supreme Court thus approved an 'effects' test that allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" Dakota Indus., 946 F.2d at 1390–91.

Sentinel asserts that the Calder "effects" test works in its favor to establish personal jurisdiction. See Calder, 465 U.S. 783. On careful review, however, the Court disagrees. To establish personal jurisdiction under Calder, Sentinel must show that Eagle Air knew that "the brunt of the injury" would be felt by Sentinel in North Dakota and that it intentionally targeted North Dakota. Dakota Indus., Inc., 946 F.2d at 1391; Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738 (8th Cir. 1992) (noting that the Calder court found intentional targeting of forum state in support of personal jurisdiction; and finding effects alone without additional contacts insufficient to bestow personal jurisdiction). Here, the brunt of the injury—damage to Sentinel's reputation—

13

would logically be felt where Sentinel and Frazier are domiciled, Wyoming and Montana. Cf. Zidon, 344 F. Supp. 2d 624 (finding the Calder effects test weighed in favor of exercising personal jurisdiction where plaintiff was a North Dakota resident alleging defamation and intentional infliction of emotional distress and defendant directly targeted North Dakota). Sentinel argues that the effects would be felt anywhere Eagle Air operated; however, even following this logic, the "brunt of the injury" would be felt where Eagle Air is headquartered—in Utah, not North Dakota. Thus, the Court finds the Calder "effects" test does not weigh in favor of exercising personal jurisdiction.

### 7. *In personam* and Civil Conspiracy

Lastly, Sentinel argues that this Court may exercise personal jurisdiction under a civil conspiracy rationale, imputing personal jurisdiction over Valley to Eagle Air, as a co-conspirator. *In personam* jurisdiction arising from civil conspiracy "allows a court to attribute the acts of a defendant to his co-conspirators for jurisdictional purposes if the plaintiff makes a prima facie showing of conspiracy." In re N. Dakota Pers. Inj. Asbestos Litig. No. 1, 737 F. Supp. 1087, 1097 (D.N.D. 1990). Sentinel argues that because Eagle Air is liable for the acts of its co-conspirator (Valley) under civil conspiracy, then it should not escape liability in North Dakota courts for lack of personal jurisdiction. "Whether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale is a question of state law." Remmes v. Int'l Flavors & Fragrances, Inc., 389 F. Supp. 2d 1080, 1094 (N.D. Iowa 2005).

The North Dakota Supreme Court has not recognized the theory, but this District has explained that "[i]f a plaintiff makes a prima facie showing of conspiracy. . . the acts of a defendant may be attributed to its co-conspirators for jurisdictional purposes." In re N. Dakota Pers. Inj.

Asbestos Litig. No. 1, 737 F. Supp. at 1099. However, the court in In re N. Dakota Pers. Inj. Asbestos Litig. No. 1, also noted that:

> The Eighth Circuit has already decided that personal jurisdiction can properly be asserted over a corporation if another with sufficient minimum contacts acts as its alter ego. Lakota Girl Scout Council, Inc. v. Havey Fund–Rais. Man., Inc., 519 F.2d 634, 637 (8th Cir.1975). Determinations concerning whether conspirator jurisdiction violates due process rights guaranteed by the constitution thus hinge on whether a co-conspirator acts as the alter ego of its co-conspirators.

Id. at 1098. More recently, this District has refused to exercise personal jurisdiction absent allegations that defendant was the alter ego of another. Alexander WF, LLC v. Hanlon, No. 4:14-CV-068, 2015 WL 12803715 (D.N.D. Feb. 19, 2015) (citing In re N. Dakota Pers. Inj. Asbestos Litig. No. 1, at 1097-98). Following this guidance, and finding Sentinel makes no allegation that Eagle Air acted as the alter ego of Valley, this Court declines to exercise *in personam* jurisdiction over Eagle Air.

All told, based on Eagle Air's minimal and attenuated contacts with North Dakota, the Court finds that exercising personal jurisdiction over Eagle Air under Federal Rule of Civil Procedure 12(b)(2) would violate due process and declines to do so here.

    **B.**    **Venue and Rule 12(b)(3)**

Eagle Air and Valley also move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). When venue is challenged, the court must determine whether it is proper under 28 U.S.C. § 1391(b). Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 55, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013). Venue in federal court is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

>(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Because these parties found proper venue in the District of Utah for the adjudication of the Underlying Action, and therefore may bring this action there, subsection (3) does not apply. Having already found lack of personal jurisdiction as to Eagle Air, subsection (1) does not apply. See 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). No property being central to the claim, whether "a substantial part of the events or omissions giving rise to the claim occurred" occurred in this District is the remaining inquiry to determine whether venue is proper.

In determining whether venue is proper in North Dakota, the Court notes that the claims in this action originate from causes of action pursued in the Underlying Action—which, notably, was adjudicated in Utah. Indeed, Sentinel does not (and likely cannot) argue that a substantial part of the events giving rise to the claims in this case occurred in North Dakota. Sentinel tries to emphasize that certain events in the Underlying Action took place in North Dakota. However, the Court finds that the events that allegedly took place in North Dakota leading to the Underlying Action are not substantial enough to find venue proper under Section 1391(b)(2). Thus, venue is improper.

Finding venue improper, the case must be dismissed or transferred. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it

be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a). The question is whether the Court should dismiss or transfer this action. "Although the decision to transfer or dismiss is. [sic] committed to the sound discretion of the district, court, [sic] the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." PKG Contracting, Inc. v. Smith & Loveless, Inc., No. CV 19-4067, 2020 WL 906760 (D.S.D. Feb. 25, 2020) (citing Crowley v. Napolitano, 925 F.Supp.2d 89, 93 (D.D.C. 2013)). Where transfer may be made wholly within the federal court system, "courts prefer to transfer the case in order 'to remove procedural obstacles which would prevent an expeditious and orderly adjudication of a case on its merits.'" Hitachi Cap. Am. Corp. v. McCollum, No. 19-CV-2747 (SRN/HB), 2020 WL 3977229 at *11 (D. Minn. July 14, 2020) (quoting Mayo Clinic v. Kaiser, 383 F.2d 653, 654 (8th Cir. 1967).

On the other hand, many courts have exercised their sound discretion to dismiss, concluding transfer is not in the interest of justice. See generally EcoWater Sys., LLC v. Hague Quality Water Intern., 2007 WL 1725761, *7 (D. Minn. 2007); Casey v. Ciccone, 306 F. Supp. 698, 698 (W.D. Mo. 1969). Sentinel focuses their argument against transfer, arguing that venue is assumed proper under Section 1404(a) and that Eagle Air and Valley have failed to show that the convenience of the parties, convenience of the witnesses, and interests of justice require transfer. "It is beyond dispute that 'federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted.'" EcoWater Sys., LLC., 2007 WL 1725761 at *5 (quoting Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir. 1997)).

That said, the Court considers many factors when determining whether the interests of justice require transfer over dismissal. For example, the costs and delays associated with Sentinel

17

refiling the case in Utah justify transfer over dismissal. See Madrinas Brands, LLC v. Horseshoe Beverage Co. LLC, No. 4:20-CV-01237-SEP, 2022 WL 823055, at *5 (E.D. Mo. Mar. 18, 2022). Similar costs and delays would result from dismantling this case by dismissing the claims as to Eagle Air for lack of personal jurisdiction but transferring as to Valley for improper venue. For that reason, transfer as to both Eagle Air and Valley is appropriate. See Quality Improvement Consultants, Inc. v. Williams, 2003 WL 543393, at *10 (D. Minn. Feb. 24, 2003); Bradley v. Nat'l Convention Services, LLC, 2006 WL 2361847 at *5 (D. Minn. 2006). "The Court's decision to transfer rather than dismiss a case is discretionary, but generally § 1406(a) is construed wherever possible to remove procedural obstacles which would prevent expeditious and orderly adjudication of a case on its merits." Madrinas Brands, 2022 WL 823055, at *5 (internal quotations and citations omitted). To avoid the costs and delays, the Court finds it in the interest of justice to transfer this case to the United States District Court for the District of Utah – Central Division. Accordingly, the Court grants the Defendants' motion to transfer venue.

### III. CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Defendants' motion to transfer venue (Doc. No. 11) is **GRANTED**, and the Defendants' motion to dismiss (Doc. No. 5) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 2nd day of May, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court